SHEEHAN v. LEVY et al.   (No. 8223.)

(Court of Civil Appeals of Texas.   Dallas.
June 28, 1919.   Rehearing Denied
Oct. 18, 1919.)

1. APPEAL AND ERROR ⬤⟿1011(1)—FINDINGS
OF FACT BY TRIAL COURT ON CONFLICTING
EVIDENCE NOT REVIEWABLE.

Trial court's determination against plaintiff,
on conflicting evidence, of the facts essential to
the injunction sought against members of master plumbers' association, on the ground of
their complicity in the action of journeymen
plumbers in leaving plaintiff's employ, is not
reviewable.

2. INJUNCTION ⬤⟿101(2)—DENIED AGAINST
LABOR UNION ORDERING MEN TO LEAVE EMPLOYMENT.

A master plumber has no ground for injunctive relief against a labor union of journeymen plumbers which withdraws its members
from his employ under a rule, adopted in the
interest of economical conduct of its affairs, of
which he has notice, that they shall not work
for one not a member of the master plumbers'
association; there being no boycott, and such
action being in the nature of a strike, lawful
under and independently of Vernon's Sayles'
Ann. Civ. St. 1914, art. 5245.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by P. J. Sheehan against M. B.
Levy and others.   Judgment for defendants,
and plaintiff appeals.   Affirmed.

George T. Burgess, of Dallas, for appellant.

Burgess, Burgess, Chrestman & Brundidge,
of Dallas, for appellees.

TALBOT, J.   The appellant, P. J. Sheehan,
sued the appellees, M. B. Levy, A. Z. Levy,
Harry Kahn, A. S. Johnson, P. J. Reaney,
J. J. Maddigan, H. J. Martin, C. Wallace,
Ed. C. Hamilton, and the Hamilton Company,
and Local Union No. 100, United Association
of Journeyman Plumbers, and O. R. Olsen
and F. B. Royse, to recover damages and for
injunction.   It is alleged that the first-named
defendants constitute an association known
as the "Master Plumbers' Association," and
that Local Union No. 100 is composed of
journeymen plumbers in the city of Dallas,
Tex., and is a subordinate local body of the
national organization, known as the United
Association of Journeyman Plumbers, with
the said O. R. Olsen as its president and the
said F. B. Royse as its business agent.   The
suit was based, in substance, upon the ground
that a conspiracy existed between the defendants to interfere with and prevent plaintiff from doing business as a plumbing contractor, by preventing journeyman plumbers
from working for him.   The trial court heard
the pleadings and evidence, and denied the
plaintiff's prayer for a temporary injunction,
and he appealed to this court.

The appellant alleged, in substance, that
he was a contracting plumber, conducting
his business in the city of Dallas, Tex., and
that he employed journeyman plumbers, who
were necessary to the conduct of his business; that at the time the petition was filed
he was engaged in installing plumbing fixtures in a building in Dallas owned by D.
E. Waggoner, and occupied by the Trinity &
Brazos Valley Railroad Company, and other
contracts, including the contract with the
Southern Methodist University, to install
plumbing fixtures in a building for that institution, and that he had been engaged in
such work during several months prior to
the institution of this suit, and at all times
employed journeyman plumbers, members of
defendant's Local Union No. 100; that he
employed only union plumbers of that organization, and that he observed union hours of
work and paid the union scale of wages;
that all of his employés were satisfied with
the terms of their employment, and had no
complaint to make against him in any respect; that the Master Plumbers' Association,
composed of the defendants Wallace, Kahn,
Maddigan, Johnson, Martin, Hamilton Company, and Hamilton & Levy, were competitors of his, and were engaged in like business in the city of Dallas; that said Master
Plumbers' Association have a conference
committee composed of defendants Hamilton,
Wallace, and Johnson, who represent said
association, and represented it in respect to
the matters and things complained of in his
petition; that shortly before the filing of
said suit said Master Plumbers' Association
told appellant that, unless he became a
member of said association, it would require
and secure all journeyman plumbers, members of said local union, working for him,
to leave his employ; that appellant refused to became a member of said association,
and that said Master Plumbers, conspiring
together, by persuasion, threats, and inducements, caused said Local No. 100, Journeyman Plumbers, to order its members who
were working for appellant to leave and
cease to work for him, and that thereafter
he was unable to employ or secure journeyman plumbers in the prosecution of his
work; that said acts of the Master Plumbers
were without justifiable cause, and were
done with malice and intent to injure appellant, and put him out of business in the city
of Dallas, and also for the purpose of lessening competition; the said Master Plumbers knew that, unless appellant could em-

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ploy journeyman plumbers, he could not complete the work then on hand, and could not longer conduct his business in the city of Dallas or elsewhere; that all of said acts were done secretly by defendants, conspiring together, to injure appellant; that the order of prohibition of said union is void and without sanction of law, and made for the purpose of aiding defendants Master Plumbers, and with the sole intent to injure plaintiff, and not to further the interests of said local union or the members thereof, and were made as a part of a conspiracy)and in furtherance of designs and intent of Master Plumbers to injure plaintiff and put him out of business; that unless appellant can employ union journeyman plumbers he cannot complete the contracts on hand, and that if he cannot complete such contracts, he will suffer great loss and damage, and be liable on bonds executed by him for the faithful performance of said work, and will have to quit business, and will suffer great and irreparable loss and damage, without any adequate remedy at law. Appellant prayed for a writ of injunction restraining the defendants, and each of them, from interfering with or molesting plaintiff and his business, and the union journeyman plumbers working for or employed by plaintiff, and from insisting upon and requiring said Local No. 100 to refuse union journeyman plumbers to plaintiff, or to allow them to work for him, and restraining the president and business agent of said local union from refusing to allow its members or other plumbers to work for appellant, etc.

The defendants Plumbers' Local Union No. 100, O. R. Olsen, and F. D. Royse, besides a general denial under oath, denied that they had entered into any agreement or conspiracy with the Master Plumbers against appellant to do the things charged by appellant, or to cause or order the members of Journeyman Plumbers' Local Union No. 100 to leave appellant's service, or to cease to work for him, or to refuse to allow any of said local union members, or other union plumbers, to work for him, and denied that appellant's men were caused to leave his work by reason of any agreement with said Master Plumbers, other than a general working agreement, in writing, between the Master Plumbers and Journeyman Plumbers' Local No. 100, the terms of which agreement were well known to appellant. They further denied that they entered into any conspiracy with the Master Plumbers against appellant, and denied that they had any malice against him, or did anything with intent to injure him, and further denied that they at any time did anything to prevent appellant from employing journeyman plumbers not members of said Local Union No. 100.

They further plead that under the charter, by-laws, and regulations adopted by said plumbers' local union they had the legal right to exercise control over its members, and in the exercise of such right, and on their own account, and for good and lawful reasons, they caused the journeyman plumbers, members of said union, working for appellant, to leave his service, but that in doing so they exercised only their lawful rights in the enforcement of the rules and regulations of said union, assented to by its members, and without violation of appellant's rights. Wherefore they prayed that the injunction be denied; that they go hence without day, and recover their costs.

The defendants composing the Master Plumbers' Association answered under oath, as follows: After general denial, they specially denied they conspired with the president, business agent, or the conference committee of or with Local Union No. 100, Journeyman Plumbers, whereby said union should or did require its members to leave plaintiff and cease to work for him, or to refuse to allow its members to work for appellant, or threaten or persuade or induce its members to cease working for appellant, or fine or otherwise penalize its members should they not cease to work for appellant. They further plead that the Master Plumbers' Association is a corporation, organized under the laws of the state of Texas, and that "all white persons, firms, or an official of a corporation engaged in the installation of plumbing in the state of Texas, having a license or other authority to perform plumbing as a Master Plumber, conducting a business in a permanent location, having the necessary tools to properly install their work, and reputed as paying their just accounts, shall be eligible to membership in this corporation." They further plead that they are individually and collectively solvent; that they never entered into such conspiracy as complained of by appellant, and never entertained malice against him, and specially denied all of the allegations in appellant's petition. They further stated that, if they were liable to appellant for any damages, he had his adequate remedy at law against such of them as might be shown to have violated his rights, at the same time denying that such violation had occurred; that if it was true, as alleged by appellant, that men working for him were withdrawn from his service and employment, such withdrawal was not at the instance or request of said defendants, but that such men were withdrawn wholly at the instance and action of Journeyman Plumbers' Local Union No. 100, and its officers and conference committee. Wherefore said defendants prayed that said injunction against them be denied; that they go hence without day, and recover their costs, etc.

[1] The first contention of the appellant

is, in substance, that the court below erred in not granting the injunction prayed for against the appellees Levy, Kahn, Johnson, Reaney, Maddigan, Martin, Wallace, Hamilton, and the Hamilton Company, master plumbers, because, under the law and the evidence, he showed himself entitled thereto. This contention must be overruled. If it should be conceded that appellant made out a prima facie case against the appellees named, which, in the absence of rebutting testimony, should, and under the law applicable thereto, have entitled him to the injunctive relief sought against them, yet the facts essential to the granting of such relief were not conclusively established, but became and were, under the evidence, issues of fact. This being true, we would not be warranted in disturbing the action of the trial court. The testimony of the appellees is to the effect that they never conspired or entered into an unlawful combination, either with Local Union No. 100, Journeyman Plumbers, its president, its business agent, or its conference committee, to injure or damage appellant's business, or for the purpose of requiring the members of said union, or any of them, to leave appellant's employ and cease to work for him, or to refuse to allow its members, or any of them, to work for appellant; that they never at any time attempted to persuade or induce any of the members of said local union by threats, coercion, or otherwise not to work for appellant or to cease working for him, and never in any manner induced, or attempted to induce, said union to withdraw any of its members from the employment of appellant or to prevent them from working for him. In other words, the testimony of the members of the Master Plumbers' Association, if true, fully and completely exonerate them and said association from any connection with or complicity in the action of said Local Union No. 100, in causing any of its members to cease working for appellant, and from any interference on their part of the free exercise by appellant's right to retain in his employ the men working for him, or to engage whomsoever he pleased in the conduct of his business. It was the peculiar province of the trial court, in view of the conflicting state of the evidence, to determine whether or not appellant was entitled to the injunctive relief asked as against the Master Plumbers' Association and its members, and, having determined that issue against him, we are not authorized to reverse and set aside his action, even though the law applicable to the evidence adduced by appellant would have entitled him to the relief sought.

Whether appellant could have conducted his business without the services of journeyman plumbers who were members of Local Union No. 100 was a controverted issue.

[2] The next contention of appellant is that the court erred in not granting the injunction asked as against Local Union No. 100 and appellees Olsen and Royse, for the reason that the uncontroverted evidence showed that said union and said Olsen and Royse took from appellant the journeyman plumbers in his employ because appellant would not become a member of the Master Plumbers' Association, such action "being an unlawful and unjustifiable interference with appellant's business or right to employ, and being violative of appellant's civil and contractual rights."

In reply to this contention the appellees, Local Union No. 100, its president, Olsen, and business agent, Royse, say that they were within their legal rights in withdrawing members of said union from appellant's employment when he failed and refused to comply with the requirements, rules, and regulations of that organization as a condition precedent to its members entering or continuing in his service, and, under the facts of this case and the law applicable thereto, the trial court did not err in refusing appellant's prayer for an injunction against said appellees.

In support of these respective contentions of appellant and appellees cases more or less analogous have been cited, but we have been furnished with the citation of no case the facts of which are identical with the facts of the instant case and we have found no such case. The governing principle, however, as we conceive it, seems to be well established. The appellant was not, in our opinion, entitled, under the facts shown, to the injunction sought upon the theory that a combination on the part of appellees in restraint of trade and to prevent competition was shown, nor upon the ground, as asserted in the assignment of error under consideration, that the action of the appellees Local Union No. 100, and its president and business agent, unlawfully and unjustifiably interfered with appellant's business or right to employ, by taking from him journeyman plumbers in his employment. It is declared by statute in this state to be lawful for any and all persons engaged in any kind of work or labor, manual or mental, to associate themselves together and form trades unions and other organizations for the purpose of protecting themselves in their personal work, personal labor, and personal services in their respective pursuits and employments; and that it shall not be held unlawful for any member or members of such trades union or other organization or association, or any other person, to induce, by peaceable and lawful means, any person to accept any particular employment, or quit or relinquish any particular employment in which such person may then be engaged, or to enter any pur-

suit, or refuse to enter any pursuit, or quit or relinquish any pursuit, in which such person may then be engaged. Vernon's Sayles' Civil Statute, art. 5245. Aside from this statute, it is well settled, eliminating the earlier decisions, that a person has the right to work for and with whom he pleases, and that laboring people may "organize for the purposes of promoting their common welfare, elevating their standard of skill, advancing and maintaining their wages, fixing the hours of labor and the rate of wages paid, obtaining employment for their members." 24 Cyc. 819. And for the accomplishment of these purposes others may combine with them. But they must proceed only by lawful and peaceful means. It has been held that they may refuse to work for any particular employer, or withdraw from the service of one whose terms are not satisfactory, and may prohibit their members from working in places where persons objectionable to them are employed; that the members of a labor union may unite in refusing to work for an employer who, after notice, continues in his employment one who is not a member of their society; that by lawful and peaceful means they may secure the discharge of such objectionable persons and procure the employment for their members. It is also held that labor unions have the right to adopt constitutions, rules, and by-laws within the scope of the lawful purposes of the union and bind their members, but they cannot enforce observance of their by-laws, rules, and regulations by any means which operate to deprive those subject to them of perfect freedom of action. 24 Cyc. pp. 820, 821, 823. The rights of individuals to form labor organizations for the protection of the interest of the laboring classes have been uniformly upheld, and with equal unanimity the courts have denied the power to enjoin the members of such organizations from withdrawing either singly or in a body. But combinations usually termed "boycott," formed for the purpose of interfering otherwise than by lawful competition "with the business affairs of others, and depriving them, by means of threats and intimidation, of the right to conduct the business in which they happen to be engaged, according to the dictates of their own judgment," have been very generally condemned. The combination here shown cannot fairly be termed a boycott, but is in the nature of a strike; and since the weight of authority is to the effect that organized labor's right of compulsion or coercion by strikes, or withholding of labor or threats thereof, is limited to strikes or withholding of labor or threats thereof, against persons with whom the combination has a trade dispute, the doctrine of the boycott cases does not apply. There is testimony, practically uncontradicted, to the effect that at the time the journeyman plumbers, members of the Local Union No. 100, quit the service of appellant, so great was the demand for such workmen at points other than the city of Dallas that the local members of said union had become greatly reduced, and the office of business agent by reason of that fact had become a burden upon the union; and, in order that such office might be dispensed with, the union and its several members adopted, or made an agreement among themselves, that after the 1st of October, 1918, they would not work for any master plumber who was not a member of the Master Plumbers' Association; "that with the proposition handled that way it would lessen the need for a business agent, and in case of any trouble the conference boards could just get together and settle any difficulties that might arise;" that if the journeyman plumbers of the union worked for none other than members of the Master Plumbers' Association they could handle their men, and the local union could handle their men and complaints made to the associations, whereas trouble coming up with men working for master plumbers not members of the association made the services of a business agent necessary all the time, and the agreement not to work for any master plumber who was not a member of the Master Plumbers' Association was regarded to be for the best interest of the union; that this agreement was not due to any understanding with the Master Plumbers' Association. The testimony also shows that notice of the agreement of members of Local Union No. 100 not to work for any master plumber who was not a member of the Master Plumbers' Association was given to all master plumbers, including appellant, at the time the agreement was made, and that all local master plumbers, who were not then members of the Master Plumbers' Association, became members of that association except the appellant; that about the 1st or 2d day of October, 1918, appellant notified a representative of Local Union No. 100 he would not become a member of the Master Plumbers' Association and said representative then notified the journeyman plumbers working for appellant who were members of said union of the decision of appellant, and instructed them to quit his employment. It further appears from the evidence that, at the time this information was given out, the fee for joining the Master Plumbers' Association was $250; but that in order to enable all master plumbers, including appellant, who were not members of the Master Plumbers' Association, to become members of that association, the initiation fee was reduced to $125; that the Master Plumbers' Association and its conference committee went out of their way in their efforts to induce appel-

lant to become a member of the association, so that he would not suffer the consequences of the journeyman plumbers' resolution not to work for any master plumber who was not a member of the Master Plumbers' Association after October 1, 1918. As before stated, it seems to have been uniformly held "that individuals have a perfect right to form labor organizations for the protection and promotion of the interest of the laboring classes, and deny the power to enjoin the members of such organizations from peaceably withdrawing from the service of the employer"; and recognizing this right, and looking to the testimony in the record before us, we see no escape from the conclusion that a case for injunctive relief was not made out by appellant, and that the judgment of the trial court should be affirmed. As said in Lohse Patent Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997, 22 L. R. A. (N. S.) 607, 128 Am. St. Rep. 492, cited by appellant, the decisions upholding the right just stated are based upon the law which permits every one to enter into any kind of a contract which has for its object and purpose the protection and promotion of the interest of the parties thereto, as well as the betterment of their condition in life; and that right to so contract is not curtailed or abridged if perchance the contract indirectly or incidentally operates in restraint of trade. It is fair to conclude from the record now before us that the purpose of appellees in taking the action complained of was to promote the interest of the members of their organizations, and not for the purpose of maliciously working injury and damage to appellant, and does not come under the condemnation of the rules of law and decisions which firmly prohibit all combinations and conspiracies formed in restraint of trade, or to injure and damage the business of the person or persons at whom they are directed. The case of Webb v. Cooks', Waiters' and Waitresses' Union No. 748, 205 S. W. 465, in which it was held that the acts of the appellees therein, as alleged by the appellant and shown by the undisputed evidence, fell "within the prohibitory effect of our anti-trust statutes," is not in conflict with our holding here. There a labor union sought to force an employer to unionize his business by means of picketing and boycotting, and it was held that these acts amounted to intimidation and coercion, and were unlawful; that the evidence disclosed a combination on the part of the labor union there involved to boycott the employer, and thereby coerce him into unionizing his business, and constituted a trust, under our statutes, and was unlawful and prohibited, notwithstanding the provisions of article 5245 of the statute, which declare that it shall not be unlawful for a member or members of a trades union or other organization to induce, or attempt to induce, by peaceable and lawful means, any person to accept or relinquish any particular employment in which such person may then be engaged. There is a vast difference in the facts of that case and the facts of the present case, and the principles of law enunciated in the former are not applicable in the latter. Indeed, in the case cited it was said that the right and privileges granted by article 5245 apparently related to cases of ordinary strikes, and was without application there. The case at bar is one in the nature of a strike, and we see no good reason for saying that article 5245 is not applicable. But aside from this statute, and for reasons indicated, we think appellant was not entitled to the injunctive relief sought.

The judgment is affirmed.